FISHER | TAUBENFELD LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

April 18, 2023

**VIA ECF**
Hon. Jesse M. Furman
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:   Paulino v. Veritas Property Management L.L.C.
             Case No.: 22-cv-8167 (JMF)

Dear Judge Furman:

      We represent Plaintiff in this action. The parties write to respectfully request that the Court approve their settlement as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) and Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

      **1.  Factual Background and Procedural History.**

      Plaintiff Louis Paulino alleges that Defendants Veritas Property Management L.L.C., 6535 Broadway Owners Corp., and James Maistre, the owner of a building, the property management company, and the property manager, violated the Fair Labor Standards Act and New York Labor Law. Plaintiff worked as a building superintendent from 2010 until the end of November 2021 at 6535 Broadway in the Bronx. Plaintiff claims that throughout his employment, his job responsibilities required him to work all seven days for approximately 70 hours a week. Nevertheless, according to Plaintiff, Defendants generally only paid him for a set rate for his regular hours and then for only two hours of overtime at time and a half.[1] According to Plaintiff, Defendants, did not pay Plaintiff for approximately 28 hours of overtime work. Plaintiff also claims that Defendants unlawfully did not provide him with paystubs that recorded the correct hours he worked. Finally, Plaintiff claims that Defendants required Plaintiff to pay $100 to park his car in the apartment's parking lot in violation of the NYLL.

---

[1] In addition to this pay, Defendants also provided Plaintiff with an apartment and paid for utilities, which he estimates totaled approximately $1,500 in monthly value.

Plaintiff also asserted that Defendants violated the FLSA and NYLL by terminating Plaintiff because he complained about Defendants' failure to pay him properly. Plaintiff claims that throughout his employment, he complained to Defendants not paying him overtime pay for all of the overtime hours he worked and that Defendants terminated him because of his complaints. After Defendants terminated Plaintiff, he remained in the apartment for a few months, and ultimately vacated it.

Defendants dispute each of these allegations. Most crucially, Defendants dispute and deny knowledge of Plaintiff's asserted overtime hours and claim that they paid Plaintiff for all overtime work that he requested. Defendants produced records showing regular overtime payments above the agreed-upon two hours and claim that whenever Plaintiff reported working overtime hours, Defendants paid him. Defendants therefore argued that either Plaintiff did not work the overtime hours he claimed or that he never reported the hours and that they had no way of knowing that he was working those hours. Defendants also assert that the deductions for parking were permissible under NYLL § 193 because Plaintiff authorized them in writing. Regarding retaliation, Defendants assert that they terminated Plaintiff for job performance reasons. In support of that assertion, Defendants pointed to several written disciplinary warnings that they issued Plaintiff throughout his employment reflecting performance problems.

Plaintiff filed this action in September 2022. After this lawsuit began, Plaintiff calculated his damages based on his recollection. Based on these records, Plaintiff calculated his total overtime damages to be $177,914.29 and the same amount for liquidated damages. Plaintiff also asserted that he was owed $5,000 for Defendants' violation of NYLL §195 by failing to provide him with paystubs that included all of his hours worked, and $6,000 under NYLL § 193. Defendants, however, vigorously dispute Plaintiff's calculation of damages, including the hours that he claimed he worked, which were significantly more extensive than what Defendants claim that Plaintiff reported. Regarding retaliation damages, Plaintiff asserted that he was owed $153,380.98 in backpay, liquidated damages, and emotional distress damages.

Upon Plaintiff's filing of the complaint, the parties agreed to attend mediation under the purview of the collective bargaining agreement between Plaintiff's union and Defendants. The parties engaged in negotiations and ultimately reached a settlement of $75,000 (**Exhibit 1**). Under the Agreement, Defendants are to pay $25,000 as an initial payment and then $8,333.33 monthly over the next 6 months. The parties also agree to a mutual general release of all claims, which includes all of Plaintiff's claims against Defendants and any potential counterclaim that Defendants could have asserted against Plaintiff, including for nonpayment of rent after Plaintiff's termination. Plaintiff also agrees not to return to the property, and Defendants agree to provide Plaintiff with a neutral reference in the event a reference contacts them. There are no nondisparagement or confidentiality clauses in the agreement. Under the Agreement, of the $75,000, Plaintiff will receive $49,612.00, and my firm will receive $25,388.00 in attorneys' fees and costs, which includes $24,806 in fees and $582 in costs for the filing fee and service costs.

2

**2. The Settlement is Proper Under Cheeks.**

The Court should approve the settlement. In determining whether to approve a settlement, courts look at the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020).

The settlement is reasonable under these factors. Although the settlement amount constitutes approximately 14% ($75,000/$526,209.56) of his best-case scenario damages, that amount is appropriate here given the risks Plaintiff faces. Lee v. Samiti Tech. Inc., No. 21CV1032CBATAM, 2021 WL 7906558, at *4 (E.D.N.Y. Sept. 8, 2021) (approval of settlement that provided for 14.3% recovery). In particular, the risks and burdens of litigation are substantial. Defendants' records show that they regularly paid Plaintiff for overtime hours when he reported them, and they may prevail at trial by arguing that Plaintiff did not work 70 hours a week or that he neglected to inform them when he did. By contrast, Plaintiff does not have any written documentation supporting his hours. Further, on retaliation, Defendants possess a substantial written record of performance deficiencies. While Plaintiff adamantly denies the veracity of Defendants' documentation, a jury could believe them and find against Plaintiff on his retaliation claim. The risk to Plaintiff are therefore serious. Further, Plaintiff avoids discovery, motions, trial, and appeals and will be paid out completely before the end of the year. Therefore, Plaintiff benefits from receiving a portion of his damages within a few months without waiting potentially years to recover and taking the risk of recovering nothing at all. Further, the parties negotiated in good faith and at arms-length with the assistance of an experienced court-appointed mediator.

Notably, no extra factors support denying approval of the settlement. Although there is a mutual general release, Plaintiff no longer works for Defendants, and Defendants had a plausible counterclaim against him. A general release is therefore appropriate. Alonso v. LE Bilboquet NY, LLC, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017). While the settlement agreement includes a "no return" provision, in which Plaintiff covenants not to return to the residential apartment complex where he worked for Defendants, ECF No. 50-1, ¶ 8, nothing about this provision is manifestly unfair or should give this Court pause in approving the parties' settlement. By the terms of the agreement, Plaintiff is not barred from contacting Defendants' employees or otherwise speaking about his case. Nor does the agreement contain non-disparagement and confidentiality provisions. This context "mitigates the concern, articulated in [Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015)], that employers hide behind private settlements and coercive confidentiality provisions to continue violating the FLSA." Vidal v. Eager Corp., No. 16-CV-979 (RRM), 2018 WL 1320659, at *3 (E.D.N.Y. Mar. 13, 2018). Reviewing a "no return" provision with nearly identical language under similar circumstances, this

Court has approved "no return" provisions as fair. *See*, *e.g.*, D. Lopez v. Nelson Mgmt. Group, Ltd., et al., Case No. 1:21-cv-00865 (JMF), Dkt. No. 51 (Oct. 28, 2022) (*unpublished*).

    Finally, the attorneys' fees are fair and reasonable as well. Counsel will be receiving $24,806 in fees, which is 33.3% of the total amount after deducting $582 in costs, which are (1) $402 in filing fees and (2) $180 in service costs. This Court has approved contingency fees of 33.3% when there are no opt-in plaintiffs. Gomez v. Winn Mgmt. Grp. LLC, No. 18-CV-8559 (JMF), 2019 WL 12313412, at *1 (S.D.N.Y. Aug. 26, 2019). Regarding calculating the lodestar, as will be explained below, Plaintiff's lodestar is 3.925. I am requesting an hourly rate of $400. I am a partner at Fisher Taubenfeld LLP. I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases and have been designated class counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (JFB)(AKT) in which Judge Brown recently granted partial summary judgment for the class on liability and damages. I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA. I have also been named a "Rising Star" by Super Lawyers and Fisher Taubenfeld LLP bills my work at $495 an hour to non-contingency based clients. Courts in this District have awarded hourly rates of $400 to experienced FLSA practioners. Tarazona v. Rotana Cafe & Rest. Inc., No. 16-CV-76 (PK), 2017 WL 2788787, at *2 (E.D.N.Y. June 27, 2017); Vargas v. Jet Peru-Courier Corp., No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *11 (E.D.N.Y. Mar. 14, 2018).

    The hours expended are appropriate as well. Plaintiffs' counsel spent 15.8 hours on this matter for a total of $6,320 which is a lodestar of 3.925. See **Exhibit 2**. This work involved drafting the complaint, preparing the damages calculations, negotiating the settlement, communicating with Plaintiff, drafting a mediation statement, attending the mediation, and drafting the settlement paperwork. Courts in this District have approved lodestars greater than 6 in FLSA cases. Riveras v. Bilboa Rest. Corp., No. 17-CV-4430-LTS-BCM, 2018 WL 8967112, at *1 (S.D.N.Y. Dec. 14, 2018) (awarding a 6.7 lodestar because "[a]pplying a lower lodestar multiplier may result in penalizing plaintiffs' counsel for achieving an early settlement."); Pinzon v. Jony Food Corp., No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (awarding a 5.23 multiplier and "recognizing the importance of encouraging the swift resolution of cases . . . and avoiding creating a disincentive to early settlement —particularly where such settlement has provided Plaintiff with a substantial and speedy result."). Fees and costs are therefore warranted.

    Thank you for your attention to the above.

                Respectfully Submitted,
                --------------------/s/-----------------
                Michael Taubenfeld

Encl.