**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LOUIS PAULINO,

                          Plaintiff,

          -v-                                         **NEGOTIATED SETTLEMENT
                                                      AGREEMENT AND MUTUAL
VERITAS PROPERTY MANAGEMENT L.L.C.,                   GENERAL RELEASE**
6535 BROADWAY OWNERS CORP., AND
JAMES MAISTRE,                                        Case 1:22-cv-08167-JMF

                          Defendants.
------------------------------------------------------------------------x

   Plaintiff Louis Paulino ("Paulino") and Defendants Veritas Property Management, ("Veritas") and 6535 Broadway Owners Corp., ("6535 Broadway"), and James Maistre ("Maistre," and, collectively with Veritas and 6535 Broadway, the "Defendants") (each referred to herein individually as a "Party," and collectively as the "Parties") desire to settle and resolve fully all claims that were or could have been brought against all named defendants by Plaintiff in this action, and have reached a compromise settlement agreement to dispose of all such claims, including but not limited to, each of Plaintiff's claims against all named defendants in the lawsuit captioned *Louis Paulino v. Veritas Property Management L.L.C., et al.*, Civil Case No. 1:22-cv-08167-JMF, pending in the United States District Court for the Southern District of New York (the "Lawsuit"). The Parties recite, agree and enter into this Agreement as follows:

   **WHEREAS**, Plaintiff was employed at a residential apartment building located at 6535 Broadway, Bronx, New York 10471 (the "Property");

   **WHEREAS**, Plaintiff's employment at the Property was terminated, effective on or about November 2, 2021;

   **WHEREAS**, Plaintiff retained counsel and, through counsel, asserted claims relating to his employment, including, but not limited to, the termination of Plaintiff's employment, loss of past or future earnings, consequential damages or emotional distress, and claims for underpaid minimum wage, underpaid overtime wages, liquidated damages, penalties and interest;

   **WHEREAS**, after negotiations, and to affect a final resolution of all matters relating to Plaintiff's employment or presence at the Property, the Parties have agreed to enter into this Negotiated Settlement Agreement and Mutual General Release (the "Agreement") as a full, final and complete resolution of this matter; and

   **WHEREAS**, the Parties desire to set forth all of the terms and conditions of their resolution in this Agreement.

**NOW, THEREFORE**, based upon their mutual promises and other good and valuable consideration, the Parties agree as follows:

1. **Incorporation of Recital Paragraphs and Additional Definitions**. The statements and definitions contained in the above recital paragraphs are incorporated herein with the same force and effect as if fully set forth herein at length. In addition, the terms set forth below shall have the following definitions:

1.1. "Effective Date" means the date this Agreement is effective, which shall occur when all of the following events have occurred:

a. Counsel for Defendants' receipt of this Agreement executed by Plaintiff, including the Agreement's annexed Stipulation of Dismissal with Prejudice (the "Stipulation of Dismissal"), which will be held in escrow by Defendants' attorneys pending the receipt of all settlement checks by Plaintiff's counsel attached hereto as Exhibit "A";

b. Counsel for the Defendants' receipt of an IRS Form W-9 executed by Plaintiff;

c. Counsel for the Defendants' receipt of an IRS Form W-9 executed on behalf of Fisher Taubenfeld LLP; and

d. Counsel for the Parties' receipt of notice of the Court's approval of this Agreement and its terms.

1.2. "General Release of All Claims by Plaintiff" means the waiver of claims set out in Paragraph 4 of this Agreement.

1.3. "General Release of All Claims by Defendants" means the waiver of claims set out in Paragraph 5 of this Agreement.

1.4. "Paragraph" means a paragraph of this Agreement, unless otherwise specified.

1.5. "Releasees" means each defendant named in the Action, including 6535 Broadway, Veritas, and Maistre, and, where applicable, their respective direct and indirect parent companies and their subsidiaries, divisions, current and former owners, equity holders, officers, board members, directors, principals, shareholders, trustees, administrators, executors, agents, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, and their administrators and fiduciaries. "Releasees" includes the immediate family members and each predecessor, successor, and assign of each of the people and entities mentioned in this Paragraph.

2. **Settlement Sum; No Other Payments**. In consideration for Plaintiff's timely signing this Agreement and complying with the promises made by Plaintiff contained in this Agreement, including the releases and waivers of claims, Defendants agree to provide Plaintiff with the total settlement sum (the "Settlement Sum") of Seventy-Five Thousand Dollars and No

Cents ($75,000.00), inclusive of attorneys' fees, in consideration for and in full satisfaction all claims Plaintiff may have against Releasees, through the date of his execution of the Agreement. Such payments shall be allocated as follows:

2.1.    On or before March 31, 2023 (the "Initial Payment Date"), Defendants shall deliver or cause to be delivered checks as follows:

2.1.1.    A check made payable to "Louis Paulino" in the amount of Eight Thousand, Two Hundred Sixty-Eight Dollars and Sixty-Seven Cents ($8,268.67), less applicable taxes and withholdings, as a first installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), which shall be reportable on an IRS Form W-2;

2.1.2.    A check made payable to "Louis Paulino" in the amount of Eight Thousand, Two Hundred Sixty-Eight Dollars and Sixty-Seven Cents ($8,268.67), as a first installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form l099 (Box 3); and

2.1.3.    A check made payable to "Fisher Taubenfeld, LLP" in the amount of Eight Thousand, Four Hundred Sixty-Two Dollars and Sixty-Six Cents ($8,462.66), as a first installment payment in satisfaction of any claim for attorneys' fees and costs, which shall be reportable on an IRS Form 1099 (Box 14).

2.2.    On or before April 30, 2023, Defendants shall deliver or cause to be delivered checks as follows:

2.2.1.    A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), less applicable taxes and withholdings, as a first installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the FLSA and NYLL, which shall be reportable on an IRS Form W-2;

2.2.2.    A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), as a first installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form l099 (Box 3); and

2.2.3.    A check made payable to "Fisher Taubenfeld, LLP" in the amount of Two Thousand, Eight Hundred Twenty Dollars and Eighty-Nine Cents ($2,820.89), as a first installment payment in satisfaction of any claim for

attorneys' fees and costs, which shall be reportable on an IRS Form 1099 (Box 14).

2.3.    On or before May 31, 2023, Defendants shall deliver or cause to be delivered checks as follows:

    2.3.1.    A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), less applicable taxes and withholdings, as a second installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the FLSA and NYLL, which shall be reportable on an IRS Form W-2;

    2.3.2.    A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), as a second installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form l099 (Box 3); and

    2.3.3.    A check made payable to "Fisher Taubenfeld, LLP" in the amount of Two Thousand, Eight Hundred Twenty Dollars and Eighty-Nine Cents ($2,820.89), as a second installment payment in satisfaction of any claim for attorneys' fees and costs, which shall be reportable on an IRS Form l099 (Box 14).

2.4.    On or before June 30, 2023, Defendants shall deliver or cause to be delivered checks as follows:

    2.4.1.    A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), less applicable taxes and withholdings, as a third installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the FLSA and NYLL, which shall be reportable on an IRS Form W-2;

    2.4.2.    A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), as a third installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form l099 (Box 3); and

    2.4.3.    A check made payable to "Fisher Taubenfeld, LLP" in the amount of Two Thousand, Eight Hundred Twenty Dollars and Eighty-Nine Cents ($2,820.89), as a third installment payment in satisfaction of any claim for attorneys' fees and costs, which shall be reportable on an IRS Form 1099 (Box 14).

2.5.    On or before July 31, 2023, Defendants shall deliver or cause to be delivered checks as follows:

2.5.1.   A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), less applicable taxes and withholdings, as a fourth installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the FLSA and NYLL, which shall be reportable on an IRS Form W-2;

2.5.2.   A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), as a fourth installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form l099 (Box 3); and

2.5.3.   A check made payable to "Fisher Taubenfeld, LLP" in the amount of Two Thousand, Eight Hundred Twenty Dollars and Eighty-Nine Cents ($2,820.89), as a fourth installment payment in satisfaction of any claim for attorneys' fees and costs, which shall be reportable on an IRS Form 1099 (Box 14).

2.6.    On or before August 31, 2023, Defendants shall deliver or cause to be delivered checks as follows:

2.6.1.   A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), less applicable taxes and withholdings, as a fifth installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the FLSA and NYLL, which shall be reportable on an IRS Form W-2;

2.6.2.   A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Two Cents ($2,756.22), as a fifth installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form l099 (Box 3); and

2.6.3.   A check made payable to "Fisher Taubenfeld, LLP" in the amount of Two Thousand, Eight Hundred Twenty Dollars and Eighty-Nine Cents ($2,820.89), as a fifth installment payment in satisfaction of any claim for attorneys' fees and costs, which shall be reportable on an IRS Form 1099 (Box 14).

2.7.    On or before September 30, 2023, Defendants shall deliver or cause to be delivered checks as follows:

2.7.1.  A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty-Three Cents ($2,756.23), less applicable taxes and withholdings, as a sixth and final installment payment in satisfaction of any claim for unpaid wages allegedly owed, including, without limitation, all claims arising under the FLSA and NYLL, which shall be reportable on an IRS Form W-2;

2.7.2.  A check made payable to "Louis Paulino" in the amount of Two Thousand, Seven Hundred Fifty-Six Dollars and Twenty- Three Cents ($2,756.23), as a sixth and final installment payment in satisfaction of any claims alleged liquidated damages, emotional distress, penalties and interest, including any such claims arising out of the FLSA or NYLL, which shall be reportable on an IRS Form 1099 (Box 3); and

2.7.3.  A check made payable to "Fisher Taubenfeld, LLP" in the amount of Two Thousand, Eight Hundred Twenty Dollars and Eighty-Nine Cents ($2,820.89), as a sixth and final installment payment in satisfaction of any claim for attorneys' fees and costs, which shall be reportable on an IRS Form 1099 (Box 14).

2.8.    All payments set forth in Paragraphs 2.1 through 2.7 above will be sent to Plaintiff care of his counsel of record, Fisher Taubenfeld LLP ("Plaintiff's Counsel"), Attn: Michael Taubenfeld, Esq., 225 Broadway, Suite 1700, New York, New York 10007, no later than the dates specified herein. Plaintiff's Counsel shall hold these payments in escrow, to be released to the Plaintiff only upon Plaintiff's Counsel's receipt of notice of the Court's approval of all terms of the Agreement.

2.9.    6535 Broadway and Veritas shall be jointly and severally liable for any payments under the Agreement.

2.10.   **Notice of Default and Right to Cure.** In the event that any payment due as set forth in Paragraphs 2.1 through 2.7 above is not received by the close of business on the final date set forth herein for such payment, or, provided that the payment date falls on a weekend or holiday, before the close of business on the next following business day, Plaintiff's counsel shall serve a written notice via email ("Notice of Default") upon counsel for the Defendants, Stephen P. Pischl, Esq. ("Defendants' Counsel"), as specified herein, and Defendants shall have ten (10) business days from receipt of same to cure the default by making such payment. In the event that Veritas does not cure the default, Plaintiff may file a motion to enforce the settlement in the District Court for the Southern District of New York or an action in the Supreme Court of the State of New York.

2.11.   **Indemnification.** Plaintiff shall be solely responsible for the payment of all local, state and federal taxes, interest, penalties and other liabilities or costs that may be assessed in connection with the settlement sum set forth in Paragraph 2 and its subparts above. Plaintiff further agrees to indemnify and hold Defendants harmless against the payment of any such taxes, interest, penalties and other liabilities or

costs that may be assessed by the Internal Revenue Service, or any other taxing authority and/or any other governmental agency (whether federal, state, or local), as a result of any failure by Plaintiff to report to the proper taxing authorities, or any failure by Plaintiff to pay income taxes on, the payments described in this Paragraph 2 and its subparts above, and/or any prior payment received from Defendants, provided that Defendants, and not Plaintiff, are responsible for any tax liabilities, payments, costs, interest and penalties concerning the Defendants' portion of any tax withholding obligations. Plaintiff acknowledges that he has not relied on any oral or other representations made by Defendants or their counsel regarding the tax consequences of any of the amounts paid pursuant to this Agreement. Plaintiff further acknowledges and agrees that neither Defendants nor counsel for Defendants, have provided any advice whatsoever on the taxability of the foregoing settlement payments to Plaintiff.

3.    **No Consideration Absent Execution of this Agreement.** Plaintiff understands and agrees that Plaintiff would not receive the monies specified in Paragraph 2 or its subparts above, except for Plaintiff's execution of this Agreement and his fulfillment of the promises contained herein.

4.    **General Release of All Claims by Plaintiff.**

4.1.    Plaintiff, for his heirs, executors, administrators, successors and assigns, hereby voluntarily releases and forever discharges the Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which he may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: the Fair Labor Standards Act, 29 U.SC. §§ 201, 215 *et seq.*; the New York Minimum Wage Law and all wage orders; the New York Wage and Wage Payment laws, including Sections 190 *et seq.* of the Labor Law; Articles 6 and 7 of the New York Labor Law; the New York City Human Rights Law, New York City Administrative Code § 8-101 *et seq.*, any other applicable federal, state or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any public policy, contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, unpaid overtime, failure to issue proper wage statements and/or wage notices, employment discrimination, retaliation, wrongful termination, constructive discharge, breach of contract, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring from the beginning of time up to and including the date of Plaintiff's execution of this Agreement (the "Released Matters"), except for claims for payment of the Settlement Sum referred to in Paragraph 2 and to otherwise enforce this Agreement.

4.2.   The release and waiver of claims as against the Releasees described in Paragraph 4.1 extends only to persons or entities acting on behalf of or in privity with Defendants themselves, and as to such persons or entities, is limited only to claims arising from actions taken in their capacity as such.

4.3.   Plaintiff expressly acknowledges that he is owed no additional wages, tips, wage supplements, payments, overtime pay, benefits, vacation pay, sick pay, severance pay, commissions, bonuses or other compensation of any kind by Defendants and/or the other Releasees, and that, aside from the Settlement Sum set forth in Paragraph 2 of this Agreement, no other compensation of any kind will be made to Plaintiff or on Plaintiff's behalf by Defendants or any of the Releasees.

4.4.   Plaintiff is not waiving the right to vested benefits under the written terms of any pension or welfare benefit plan, if any, claims for unemployment or workers' compensation benefits, any medical claim or any judgment or monetary awards or settlements that may arise related to medical benefits under any benefit plan sponsored by Defendants, claims arising after the date on which Plaintiff signs this Agreement, or claims that are not otherwise waivable under applicable law.

4.5.   Plaintiff agrees that he will immediately seek and obtain the dismissal of this Lawsuit (including, but not limited to, by returning to Defendants' Counsel the executed Stipulation and Order of Final Dismissal with Prejudice attached to this Agreement as Exhibit "A"), and any other complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding (unless such proceeding is a class or collective action in which case Plaintiff agrees to "opt out" of the class or otherwise not to participate in the class or collective action) against the Releasees as to any of the Released Claims.

4.6.   The Parties intend that the Release in this Paragraph 4 and its subparts shall be as broad as possible and shall apply to all claims relating to or arising from Plaintiff's employment or presence at the Property, not specifically excepted in Paragraph 6 of this Agreement, to the greatest extent permitted by applicable law.

5.   **General Release of All Claims by Defendants.** In consideration for Plaintiff's timely signing this Agreement and complying with the promises made by Plaintiff contained in this Agreement, including the releases and waivers of claims, to which Defendants are not otherwise entitled, to the greatest extent permitted under applicable law, Defendants knowingly and voluntarily release and forever discharge Plaintiff of and from any and all claims, debts, obligations or liability whatsoever, whether arising in law or equity, whether known or unknown, that they have or may have against Plaintiff, as of the date of execution of this Agreement, including, but not limited to, release of all rent and claims in connection with the apartment or apartments Plaintiff resides in or resided in during and after his employment with any of the Defendants.

**6.    Limitations on the Parties' Mutual Releases of Claims.** For the avoidance of doubt, the Releases in Paragraphs 4 and 5 of this Agreement are limited by the following:

6.1.    Nothing in this Agreement restricts or prohibits anyone from (i) complying with a lawful subpoena or other legal process, or (ii) initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Plaintiff is waiving his right to receive any individual monetary relief from the Releasees resulting from such claims or conduct, regardless of whether Plaintiff or another party has filed them, and in the event Plaintiff obtains such monetary relief the Releasees will be entitled to an offset for the payments made pursuant to this Agreement. This Agreement does not limit Plaintiff's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law.

6.2.    This Agreement does not release the Parties from their obligations under this Agreement. Any Party may bring a claim for breach of this Agreement. If any Party brings any claim or action for breach of this Agreement or to enforce its respective rights under this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs that they incur in connection therewith, and any other remedies available at law.

6.3.    Plaintiff has not made any claims, including, without limitation, claims of sexual harassment or sexual abuse, relating to or arising out of his employment at the Property or by Defendants or Releasees or his presence at the Property, and agrees that no part of the consideration he is receiving in this Agreement concerns any such claims as against Defendants or the Releasees.

**7.    Medicare Eligibility and Enrollment and Satisfaction of any Medicare Reimbursement Obligations.**

7.1.    Plaintiff represents and warrants that he has not received any medical services or items related to, arising from, or in connection with the Released Matters.

7.2.    Plaintiff acknowledges and represents that Medicare has not paid for the medical items or services, if any, provided to him in connection with the Released Matters. Notwithstanding this representation, Plaintiff further acknowledges and agrees that it is his responsibility pursuant to this Agreement, and not the responsibility of the Releasees, to reimburse Medicare for any Conditional Payments made by Medicare on behalf of him.

7.3.     Plaintiff further agrees to indemnify, defend and hold Defendants and Releasees harmless against the payment of any amounts, penalties and other liabilities or costs that the Centers for Medicare & Medicaid Services may contend are owed related to, arising from, or in connection with the Released Matters.

**8.      Plaintiff's Covenant Not to Return to the Property.** Plaintiff acknowledges and agrees that his employment at the Property has ended, and he covenants and agrees not to enter the premises at 6535 Broadway, Bronx, New York for any reason.

**9.      Further Procedure.** After this Agreement and the Stipulation of Dismissal are fully-executed by the Parties and their counsel, subject to Defendants' review of and consent to the motion for judicial approval of the settlement, Plaintiff will submit the Agreement and Stipulation to the Court on behalf of the Parties for the Court's consideration and approval. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Court's approval of all provisions of this Agreement is a material term of this Agreement. In the event that the Court does not approve this Agreement, the Parties jointly agree to cooperate in renegotiating and seeking the Court's approval of an enforceable written settlement agreement that honors the Parties' agreement in principle as set forth herein.

**10.     Notices.** All notices and other communications related to this Agreement shall be in writing and shall be given by email and hand delivery to the other party or by email and registered or certified mail, return receipt requested, postage prepaid, or reputable overnight courier (such as Federal Express or UPS). Unless another address is provided to the other Party in writing, notice shall be given:

**To Plaintiff:** c/o Michael Taubenfeld          **To Defendants:** c/o Stephen P. Pischl

Fisher Taubenfeld LLP                              Clifton Budd & DeMaria, LLP
225 Broadway, Suite 1700                           350 Fifth Avenue, 61st Fl
New York, NY 10007                                 New York, NY 10118
michael@fishertaubenfeld.com                       sppischl@cbdm.com

**11.     Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.

**12.     No Admission of Wrongdoing.** The Parties agree that neither this Agreement, nor the furnishing of the consideration for this Agreement, nor otherwise complying with its terms, shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**13.     Neutral Reference.** The Parties agree that in response to all employment verification requests for Plaintiff, Defendants shall provide only information regarding Plaintiff's location of work, dates of employment, and last position held, and, if further requests are posed, state that it is company policy not to provide any other information. Any requests for references

are to be directed to James Maistre, Veritas Property Management LLC, 1995 Broadway, #201, New York New York 10023, jimmy@veritasmanagement.com.

**14.      Strict Compliance.** The failure of any Party to insist upon strict compliance with any provision of this Agreement, or the failure to assert any right any Party may have hereunder, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

**15.      Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

**16.      Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiff acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

**17.      Section Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

**18.      Legal Fees.** Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

**19.      Counterparts.** This Agreement may be executed in counterparts with all counterparts constituting the entire Agreement and with the same full force and effect as if this Agreement were not executed in counterparts. Electronic and facsimile signatures, including via DocuSign, shall be deemed as originals.

**20.      Joint Participation in Preparation of Agreement.** The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

**21.      Severability and Modification.** If any provision of this Agreement is declared illegal or unenforceable by this Court, Plaintiff and Defendants agree that this Court has the full discretion to interpret or modify all such provisions to be enforceable and is directed to do so. In the event this Court declares the Releases unenforceable and cannot modify the Releases to become enforceable, the Parties jointly agree to cooperate in renegotiating and seeking the Court's approval of an enforceable written settlement agreement that honors the Parties' agreement in principle as set forth herein.

**22.      Competency to Waive Claims.** At the time of considering or executing this Agreement, Plaintiff was not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Plaintiff is competent to execute this Agreement.

**23.    Acknowledgments and Affirmations.**

23.1.    Plaintiff affirms that in the Lawsuit he has asserted a claim seeking unpaid wages or overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis, and affirms that there is a *bona fide* dispute as to such FLSA claims which are being settled and released by this Agreement. Plaintiff believes that this settlement is fair and reasonable, and authorizes his attorney to seek from the Court approval of the settlement as fair and reasonable under the FLSA, and dismissal of the Lawsuit with prejudice;

23.2.    Plaintiff acknowledges that, except as to any amounts which might be vested and come due under employee benefit plans governed by ERISA or non-qualified deferred compensation, or under the terms of any insurance policies, if any, which may remain in effect for Plaintiff, Defendants do not owe Plaintiff any further compensation, overtime compensation, bonus, incentive compensation, accrued vacation pay or monies of any kind; and

23.3.    The payments provided for above fully and completely settle all claims by Plaintiff and Plaintiff's counsel against Releasees for attorneys' fees, costs, disbursements and the like.

23.4.    Plaintiff acknowledges and agrees that (i) he is represented by Michael Taubenfeld, Esq., (ii) he is satisfied with Mr. Taubenfeld's representation of him in this matter, and (iii) Mr. Taubenfeld used his best efforts to pursue and resolve the disputes between Plaintiff and the Releasees in a manner that is fair to Plaintiff's interests. Plaintiff also represents and agrees that he discussed all aspects of his claims and allegations and this Agreement with his counsel, has been fully advised by his counsel as to his rights, understands that he is waiving significant legal rights by signing this Agreement, and enters into this Agreement voluntarily, with the full understanding of the Agreement and all of its terms.

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ CAREFULLY. THIS AGREEMENT IS A LEGAL DOCUMENT AND INCLUDES A RELEASE OF CLAIMS AS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL CLAIMS ARISING UNDER ALL FEDERAL, STATE AND/OR LOCAL LAWS THAT WERE OR COULD HAVE BEEN RAISED IN THIS ACTION.**

**BY SIGNING THIS AGREEMENT, PLAINTIFF ACKNOWLEDGES AND AFFIRMS THAT HE IS COMPETENT TO ENTER INTO THIS AGREEMENT, THAT HE HAS READ AND UNDERSTANDS AND ACCEPTS THAT THE RELEASE HEREIN WILL FULLY AND FINALLY WAIVE AND RELEASE THE RELEASED CLAIMS, THAT NO REPRESENTATIONS, PROMISES OR INDUCEMENTS HAVE BEEN MADE TO HIM EXCEPT AS SET FORTH IN THIS AGREEMENT, THAT THIS AGREEMENT IS WRITTEN IN A MANNER AND A LANGUAGE THAT IS UNDERSTANDABLE TO HIM, AND THAT HE HAS SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY, INTENDING TO BE LEGALLY BOUND BY ITS TERMS, WITHOUT ANY DURESS OR COERCION, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.**

    **IN WITNESS WHEREOF**, the parties hereto knowingly and voluntarily executed this Negotiated Settlement Agreement and Mutual General Release as of the date set forth below:

Dated:   New York, New York    SIGNED AND AGREED TO BY:
      <u>3/30/2023</u>, 2023

                 DocuSigned by:

               DDE64B0DDD7A477...
               LOUIS PAULINO

*[Remainder of Page Intentionally Left Blank]*

Dated:    New York, New York
                  _____, 2023

SIGNED AND AGREED TO BY:

_____

JAMES MAISTRE

Dated:    New York, New York
                  _____, 2023

6535 BROADWAY OWNERS CORP.

By: _____

Name:

Title:

Dated:    New York, New York
                  _____, 2023

VERITAS PROPERTY MANAGEMENT, L.L.C.

By: _____

Name:

Title:

- 14 -

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LOUIS PAULINO,

               Plaintiff,

    -v-

VERITAS PROPERTY MANAGEMENT L.L.C.,
6535 BROADWAY OWNERS CORP., AND
JAMES MAISTRE,

            Defendants.
------------------------------------------------------------------------x

**STIPULATION AND ORDER
OF FINAL DISMISSAL WITH
PREJUDICE**

Case 1:22-cv-08167-JMF

     **IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned attorneys of record for the parties to the above-entitled action, that the Negotiated Settlement Agreement and Mutual General Release in this matter having been reviewed by the Court and found to be fair and reasonable, that the above-captioned action and all claims therein shall be dismissed in its entirety, with prejudice, in accordance with the terms of the Negotiated Settlement Agreement and Mutual General Release.

     **IT IS FURTHER STIPULATED AND AGREED** that the Court shall retain jurisdiction over this action to interpret and enforce the Negotiated Settlement Agreement and Mutual General Release entered into by the parties.

     **IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts, and that a facsimile or electronic signature on this Stipulation shall have the same force and effect as an original signature.

- 1 -

DocuSign Envelope ID: 8E352F5D-E490-4437-B74C-5120E2C2B2D5

FISHER TAUBENFELD LLP                    CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Plaintiff*                *Attorneys for Defendants*

By:  *Michael Taubenfeld*            By:  [signature]
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾         ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
     Michael Taubenfeld, Esq.             Stephen P. Pischl, Esq.
     225 Broadway, Suite 1700             350 Fifth Avenue, 61st Floor
     New York, NY 10007                   New York, New York 10118
     (212) 571-0700 (tel.)                (212) 687-7410 (tel.)
     michael@fishertaubenfeld.com         sppischl@cbdm.com

Dated:  New York, New York           Dated:  New York, New York
        April 18                             April 18
        ‾‾‾‾‾‾‾‾‾‾, 2023                      ‾‾‾‾‾‾‾‾‾‾, 2023

SO ORDERED on this ‾‾‾‾‾‾‾‾‾‾‾‾ day of ‾‾‾‾‾‾‾‾‾‾‾‾, 20‾‾‾‾‾‾.


‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Hon. Jesse M. Furman
United States District Judge